**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────

**SHERRY SCALERCIO-ISENBERG,**

                    **Plaintiff,**          **18-cv-9226 (JGK)**

          **- against -**               <u>**MEMORANDUM OPINION**</u>
                                        <u>**AND ORDER**</u>
**CITIZENS FINANCIAL GROUP, INC., and**
**BRUCE VAN SAUN,**

                    **Defendants.**
─────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

     The defendants, Citizens Financial Group, Inc. ("Citizens")

and Bruce Van Saun, have moved to dismiss the Second Amended

Complaint ("SAC") filed by the <u>pro se</u> plaintiff, Sherry

Scalercio-Isenberg, for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6). In a Memorandum

Opinion and Order dated April 11, 2019 (<u>Scalercio-Isenberg I</u>),

this Court dismissed the plaintiff's First Amended Complaint

("FAC") against Citizens, but gave the plaintiff the opportunity

to amend her complaint. <u>See</u> <u>Scalercio-Isenberg v. Citizens</u>

<u>Financial Group, Inc.</u>, No. 18-CV-9226 (JGK), 2019 WL 1585121

(S.D.N.Y. Apr. 11, 2019). For the reasons stated below, the

defendants' motion to dismiss the SAC is **granted in part** and

**denied in part**.

                              **I.**

     In deciding a motion to dismiss pursuant to Rule 12(b)(6),

the allegations in the complaint are accepted as true, and all

reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007). The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985). The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face." Bell Atl. Corp. v. Twombly,
550 U.S. 544, 570 (2007). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009). Moreover, pro se complaints are construed liberally.
Dolan v. Connolly, 794 F.3d 290, 293 (2d Cir. 2015).

While the Court should construe the factual allegations in
the light most favorable to the plaintiff, "the tenet that a
court must accept as true all of the allegations contained in
the complaint is inapplicable to legal conclusions." Id. When
presented with a motion to dismiss pursuant to Rule 12(b)(6),
the Court may consider documents that are referenced in the
complaint, documents that the plaintiff relied on in bringing
suit and that are either in the plaintiff's possession or that
the plaintiff knew of when bringing suit, or matters of which

judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## II.

The Court accepts the following allegations solely for purposes of the pending motion. As stated in Scalercio-Isenberg I, the plaintiff alleges that she and her husband obtained a home equity line of credit (a "HELOC") from the lender "Charter One," and Citizens later acquired the HELOC. See 2019 WL 1585121, at *1. The loan, executed in April, 2008, was in the amount of $ 49,845.88 and was secured by a home in New Jersey. Bettino Decl. Ex. A at 1. Citizens is incorporated in Delaware and has its principal place of business in Rhode Island. See 2019 WL 1585121, at *2. The plaintiff has alleged that she primarily dealt with a branch of Citizens located in the Southern District of New York and that the summons and complaint in this case were served on that branch. Id. Three or four years ago, the HELOC had an outstanding balance of about $ 48,000, which the plaintiff and her husband pay off in monthly payments. Id. at *1. The HELOC agreement included a section titled "Your Billing Rights," which notified the plaintiff of her "rights and responsibilities under the Fair Credit Billing Act."[1] Bettino Cert. Ex. A. The section informed the plaintiff that she could

---

[1] Because the plaintiff relies on the HELOC and the Billing Rights section in her SAC, the Court considers the text of the HELOC in analyzing the motion to dismiss.

write to "Charter One Servicing Department" at "P.O. Box 42002, Providence, RI, 02940-2002" in the event of errors or questions about her bill. Id. at 4. The notice also stated, "[a]fter we receive your letter, we cannot try to collect any amount you question, or report you as delinquent." Id.

The plaintiff alleges that the defendants made several errors on her account over several years, which include (1) failing to post payments to her loan account, (2) improperly reporting negative credit information, and (3) fraudulently opening a new account in her name.

First, the plaintiff claims that she attempted to make several payments for her loan in 2016, but that Citizens failed to post those payments to her account. SAC at 2; SAC Ex. 7. For example, the plaintiff alleges that in February, 2016, she sent a check of $100.00 to Citizens for payment; however, Citizens returned the original check with a letter dated March 4, 2016, which stated that Citizens was "unable to identify an account to credit." SAC Ex. 7.

Attempting to correct the non-posting of payments, the plaintiff sent a letter to Bruce Van Saun on May 4, 2016. SAC at 2; SAC Ex. 7. Van Saun is the Chief Executive Officer of Citizens. SAC at 2. The letter stated the plaintiff's name and loan number, that she had attempted to submit monthly payments, but that the payments had not been posted by Citizens and

explained that she thought this was an error because she had made all payments on time. SAC Ex. 7. The letter also mentioned that her check was returned in March. Id. The plaintiff does not indicate to which address she mailed the May 4, 2016 letter. Id. The plaintiff received no response to this letter. SAC at 2. On November 9, 2016, the plaintiff sent another letter to Van Saun, at One Citizens Plaza, Providence, RI 02903. SAC Ex. 6.

Second, after sending the letters, the plaintiff alleges that instead of acknowledging the errors and taking corrective action, Citizens reported inaccurate, negative credit information to the credit reporting agencies. SAC at 2. The plaintiff states that she then took various steps to dispute the erroneous credit information reported by Citizens. Id. at 5. On April 23, 2018, she filed a dispute with an unidentified credit reporting agency ("CRA").[2] Id. On August 20, 2018, she also filed a complaint with the Consumer Financial Protection Bureau ("CFPB"). SAC at 5; SAC Ex. 3 at 2.

Third, in March 2018, the plaintiff received a letter from Citizens indicating she had opened a "new account" but that Citizens had not yet received her "first payment that was due on

---

[2] The plaintiff did not include a full dispute report in the SAC, but references "[Exhibit#2018.04.23.FCRA]." SAC at 5. An exhibit attached to the SAC is entitled, "A Summary of Your Rights under the Fair Credit Reporting Act." SAC Ex. 2. On this page, there appears to be a date of April 23, 2018 and a report number 3954-1162-96. Id.

02/23/2018." SAC at 8; SAC Ex. 1 at 2. The plaintiff alleges
that she did not open this account. SAC at 8.

Due to these errors, the plaintiff alleges that she
suffered negative credit reporting and has been denied loans due
to reports of her "delinquent past or present credit obligations
with others" and "current/previous slow payments, judgments,
liens or BK." SAC Ex. 1 at 1, 3. She states that she had to
pursue "expensive financing," and has been denied access to over
$300,000 in savings invested in her home. SAC at 11.

The plaintiff also alleges that the defendants sent
her threatening and harassing extortionate letters by
United States certified mail in an attempt unlawfully to
extract money from her and her husband. Id. at 2. Further,
in March and July 2018, the plaintiff received "automated,"
"[r]obo calls" from the defendant. Id. at 4-5. These calls
were made by Citizens using "an automated, technical
dialing device" and were made to the plaintiff's "cellular
phone multiple times per day/per week." Id. at 2. The
plaintiff states that "no person was on the line when [she]
answered" and that "when [she] called the number back, it
was automatically answered stating, 'you've reached
Citizens Bank.'" Id. at 4.

Additionally, the plaintiff alleges that Citizens used
various entity names to "deceptively . . . set up their

organizational structure" in a manner that obscures the
fact that they are a debt collector for Charter One. Id. at
6-7. The plaintiff lists several names of Citizens'
entities, including "Citizens Financial Group," "Citizens
Bank N.A.," "Citizens Home Loans," "Charter One A division
of RBS Citizens N.A.," and "Charter One N/A," and alleges
that she received letters or statements from all of them.
Id.

The plaintiff previously brought a lawsuit against
Citizens in 2016 and alleges that the defendants are now
seeking revenge in retaliation because the previously filed
lawsuit was settled. Id. at 9. She also alleges that the
defendants and their lawyer have joined together to force
the plaintiff's loan into default, to increase legal fees,
and to eliminate the obligation of Citizens to service the
loan in order to turn a profit. Id. at 8-11.

In the SAC, the plaintiff adds Bruce Van Saun as an
individual defendant and alleges 7 claims against the
defendants. She first claims that the defendants breached a
provision of the HELOC contract that incorporated rights under
the Fair Credit Billing Act ("FCBA"). Second, she states that
the defendants violated New York General Business Law ("NYGBL")
§ 349. Third, the plaintiff brings a claim of fraudulent schemes
and artifices pursuant to Section 13-2310 of Arizona's Criminal

Code. Fourth, she claims that the defendants violated the Telephone Consumer Protection Act ("TCPA") by making automated calls to her cell phone in March, 2018 and July, 2018. Fifth, the plaintiff reiterates her argument from the FAC that the defendants violated the Fair Credit Reporting Act ("FCRA"). Sixth, the plaintiff argues that the defendants are debt collectors who violated the Fair Debt Collection Practices Act ("FDCPA"). Finally, the plaintiff alleges that the defendants committed common law fraud.

### III.

### A.

The defendants contend that the addition of Bruce Van Saun as a named defendant is improper because the plaintiff's allegations are too vague to hold Van Saun personally liable for the alleged acts of Citizens. Under New York law,[3] a

---

[3] The HELOC provides that it is "governed by federal law" and "to the extent [not] pre-empted by federal law, the law of Rhode Island." Bettino Decl. Ex. A at 4. "A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989) (citations omitted). "Although New York courts generally accord deference to choice-of-law provisions in contracts . . . such provisions are not controlling and may be disregarded where the most significant contacts with the matter in dispute are in another State. Moreover, in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied." See Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984) (citations omitted); see also Cargill, Inc. v. Charles Kowsky Res., Inc., 949 F.2d 51, 55 (2d Cir. 1991). In this case, the plaintiff had primarily dealt with a branch of Citizens located in New York and all parties rely on New York law rather than Rhode Island law in their briefings; the Court thus applies New York law to all the state law claims.

corporation's officers and directors are not "generally liable for their corporation's debts or its breach of a contract." Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994); see also LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 66 (2d Cir. 1999) (noting that the corporate form creates a legal shield that limits liability of officers and directors). Liability may attach, however, if the officers or directors know of or participate in the fraud alleged in the complaint. See Cohen, 25 F.3d at 1173.

The plaintiff makes no colorable claim that Van Saun knew of or participated in a fraud. The plaintiff alleges that Van Saun received two letters about the billing dispute, one mailed in May 2016 and the other in November of the same year. SAC at 2-3. Van Saun did not respond to the first letter. Id. at 2. That Van Saun received a letter from the plaintiff notifying him of the billing dispute and then failed to respond is not enough to sustain an allegation that he intentionally participated in a fraud.

Because the plaintiff has not alleged sufficient facts to plead any claim against Van Saun in an individual capacity, the defendants' motion to dismiss claims against Bruce Van Saun is **granted.**

**B.**

The defendants seek to dismiss the plaintiff's claim for breach of contract (Count I) for failure to state a claim.

To survive a motion to dismiss for a breach of contract claim under New York law, a complaint must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Dukes v. N.Y.C. Emps.' Ret. Sys., 361 F. Supp. 3d 358, 370-71 (S.D.N.Y. 2019) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)).

In this case, the plaintiff has alleged elements 1, 2, and 4. As to the first element, the plaintiff alleges that she and her husband signed a contract for the HELOC in April, 2008. Regarding the second element, the plaintiff has alleged that she and her husband performed in full under the contract – namely that they timely paid their bills. And for the fourth element, the plaintiff claims that she has suffered damages – specifically, negative credit reporting that caused her to be denied access to further credit and forced her to take out expensive financing.

As to the third element, the plaintiff alleges that the defendants breached the portion of the contract that incorporated rights under the FCBA by reporting inaccurate negative credit information to CRAs. The FCBA provides a private

right of action. See 15 U.S.C. § 1640. In this case, the terms of the contract incorporated the elements of 15 U.S.C. § 1666(a). Thus, while the plaintiff frames this claim as a breach of contract claim, the issue is whether the plaintiff has adequately alleged a FCBA claim. Under the provisions of the FCBA incorporated into the HELOC, if the plaintiff properly sent a notice of billing errors to Citizens, Citizens could not report the plaintiff as delinquent.

Under the FCBA, a consumer may notify a creditor of billing errors by writing to the creditor within sixty days of the creditor's first transmission of a statement with the errors. See 15 U.S.C. § 1666(a). The regulations provide that written notice of a billing error must be "received by a creditor . . . no later than 60 days after the creditor transmitted the first periodic statement that reflects the alleged billing error." 12 C.F.R. § 226.13 (emphasis added). The creditor's duties under the FCBA are triggered only upon receipt of a notice complying with the requirements of 15 U.S.C. § 1666(a). Jaffe v. Capital One Bank, No. 09-CV-4106 (PGG), 2010 WL 691639, at *8 (S.D.N.Y. Mar. 1, 2010). The notice of error must be received at the address included on the statement for each billing cycle. 15 U.S.C. § 1666(a); 15 U.S.C. § 1637(b)(10). The address also "may be provided on the billing rights statement." 12 C.F.R. § 226.7(a)(9).

The Billing Rights section of the contract between the plaintiff and Charter One listed the address to which the plaintiff could send disputes as "Charter One Servicing Department, P.O. Box 42002, Providence, RI, 02940-2002." The plaintiff sent a letter to Van Saun on May 4, 2016, explaining that payments she had been making to Citizens were not being properly posted.[4] The letter does not contain dates specifying when the plaintiff first noticed that billing errors were occurring. In any event, the plaintiff stated that Citizens had returned her check with a letter stating that it was unable to identify an account to credit on March 4, 2016. Assuming this was the first time the plaintiff learned of the billing error, the time between March 4, 2016 and May 4, 2016, is 61 days. Because the letter was drafted after 60 days of Citizens' transmission of the statement, it was not possible for the creditor to have received notice of the dispute within 60 days. Further, no mailing address is noted in the SAC or on the letter itself to indicate that the letter was mailed to the correct address.

The plaintiff's November 9, 2016 letter to Van Saun was sent to a different address than specified in the contract. SAC

---

[4] Billing errors include "the creditor's failure to reflect properly on a statement a payment made by the obligor." 15 U.S.C. § 1666(b)(4).

Ex. 6. Thus, the November 9, 2016 letter also did not trigger obligations under the FCBA.

Because the plaintiff has failed to allege that she complied with the notice provisions of the FCBA under § 1666, she has not alleged that Citizens' duties under the FCBA were triggered and that it breached the terms of the HELOC agreement. Accordingly, the defendants' motion to dismiss Count I of the SAC is **granted.**

### C.

The defendants argue that the plaintiff has failed to state a claim under NYGBL § 349 (Count II). The plaintiff references NYGBL § 349 twice in her SAC: as a standalone Count II and under Count VII for fraudulent schemes and artifices.

To state a claim under NYGBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (quoting Koch v. Acker, Merrall & Condit Co., 967 N.E.2d 675, 675 (N.Y. 2012)).

"With regard to the first factor, the gravamen of the complaint must be consumer injury or harm to the public interest. The critical question, then, is whether the matter affects the public interest in New York, not whether the suit is

brought by a consumer or a competitor." <u>Vitolo v. Mentor H/S,</u>
<u>Inc.</u>, 426 F. Supp. 2d 28, 33-34 (E.D.N.Y. 2006) (internal
quotation marks and citations omitted), <u>aff'd</u>, 213 Fed. App'x.
16 (2d Cir. 2007). To fall within the ambit of NYGBL § 349, a
plaintiff must allege more than "[p]rivate contract disputes,
unique to the parties" and instead must "demonstrate that the
acts or practices have a broader impact on consumers at large."
<u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,</u>
<u>N.A.</u>, 647 N.E.2d 741, 744 (N.Y. 1995). With regard to the second
factor, for an act to be misleading, it must be "likely to
mislead a reasonable consumer acting reasonably under the
circumstances." <u>Id.</u> at 26. The third element of a NYGBL § 349
claim requires a plaintiff to allege "an injury stemming from
the misleading practice." <u>Orlander</u>, 802 F.3d at 301.

In her complaint, the plaintiff does not specifically
allege what the consumer-oriented conduct was, or how the
deceptive practices might affect other consumers. To the extent
that the misleading acts or practices related to failing to post
payments to her loan account, reporting negative credit
information for missed payments, and opening a new consumer
account improperly, these issues raise private disputes between
the parties. As the plaintiff did in this case, a reasonable
consumer would recognize if a new account did not belong to her
and would not likely be misled. Further, the plaintiff cannot

satisfy the third requirement because she has not alleged that a misleading practice, from which an injury could have arisen, occurred. Accordingly, the defendants' motion to dismiss Count II is **granted.**

**D.**

The defendants correctly argue that the plaintiff's claim under Arizona's Criminal Code § 13-2310 (Count III) should be dismissed because there is no colorable claim that there is a private right of action under that criminal statute and no explanation at all why an Arizona criminal statute applies to the claims in this case. Accordingly, the defendants' motion to dismiss Count III is **granted.**

**E.**

The defendants move to dismiss Count IV for failure to state a claim under the TCPA. They argue that the plaintiff's conclusory allegation that she received "automated," "robo calls" from Citizens is insufficient to state a TCPA claim because the plaintiff does not allege that Citizens made calls using an automatic telephone dialing system or an artificial or prerecorded voice in violation of the TCPA.

The TCPA makes it unlawful to make any nonemergency or unconsented-to call "using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service

. . . unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1). The TCPA defines an "automatic telephone dialing system" as equipment which has the "capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such numbers." Id. at § 227(a)(1). "To state a claim under the TCPA, a plaintiff must allege that: (1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system [and/or leaving an artificial or prerecorded message] and (3) without prior consent of the recipient." Ford v. Bluestem Brands, Inc., No. 18-CV-2695, 2019 WL 1046367, at *3 (S.D.N.Y. Mar. 5, 2019) (quotation marks omitted, alteration in the original). However, a plaintiff "need not plead specific technical detail regarding the use of an [automatic dialing system] and must only describe, in layman's terms, the facts surrounding the calls or the circumstances surrounding the calls that make it plausible that [the defendants] were using an [automatic dialing system]." Schleifer v. Lexus of Manhattan, No. 17-CV-8789 (AJN), 2019 WL 4640055, at *6 (S.D.N.Y. Sep. 24, 2019) (internal quotation marks and citation omitted).

In this case, the plaintiff alleges that Citizens placed multiple calls to her cell phone. While the plaintiff does not explicitly state that she had not consented to the calls, it is

apparent that the calls were unwanted and viewed as harassment. Further, the plaintiff had previously hired a lawyer to stop the robo calls. See Scalercio-Isenberg I, 2019 WL 1585121 at *1. The plaintiff alleges that Citizens "used an automated, technical dialing device" to call her cellular phone multiple times per day/per week. She provides five instances of "robo calls" and states that no person was on the line when she answered the calls. Additionally, when she called back the numbers, the line was automatically answered as "you've reached Citizens Bank." Taken together, these allegations are sufficient to state a claim that Citizens used an automatic telephone dialing system to place the calls at issue. Whether the alleged automatic telephone dialing system used by Citizens meets the technical statutory requirements is an issue to be pursued in discovery. Accordingly, the plaintiff has sufficiently stated a claim for TCPA violations and the defendants' motion to dismiss Count IV is **denied.**

### F.

The defendants argue that the plaintiff has failed to state a claim under the FCRA (Count V). They argue that (1) the provision on which the plaintiff's FCRA cause of action appears to be based, 15 U.S.C. § 1681s-2(a), does not contain a private right of action, and (2) if the plaintiff's cause of action rests on § 1681s-2(b), she has failed to state a claim.

As noted in Scalercio-Isenberg I, there is no private right of action under § 1681s-2(a). See 2019 WL 1585121, at *3.

Section 1681s-2(b) "imposes a duty upon those who furnish information to credit reporting agencies to conduct an investigation upon notice that a consumer has disputed the accuracy or completeness of reported information." Longman v. Wachovia Bank, N.A., No. 09-CV-01669 (JCH), 2011 WL 4352102, at *4 (D. Conn. Sept. 16, 2011), aff'd, 702 F.3d 148 (2d Cir. 2012). Before a consumer may bring a claim under § 1681s-2(b), the furnisher of information — namely, the defendant — must receive notice from a credit reporting agency that the consumer disputes the accuracy or completeness of the information reported by the furnisher of information. Barberan v. Nationpoint, 706 F. Supp. 2d 408, 427 n.12 (S.D.N.Y. 2010) (finding that no valid § 1681s-2(b) claim existed when the plaintiff had not alleged any facts showing that the credit reporting agency had notified the furnisher of information about the dispute).

The plaintiff alleges that she disputed the defendants' negative credit reporting to an unidentified CRA on April 23, 2018. The plaintiff filed the SAC on May 9, 2019. In her Opposition to the current motion, the plaintiff notes that on May 29, 2019, she received a "Dispute Results" message from the CRA, Experian, stating, "[o]ur reinvestigation of the dispute(s)

18

and/or other request(s) you recently submitted is now complete."[5]

Pl.'s Opp. Ex. 3. The exhibit contains only the first page of a

fourteen-page document from Experian, and states in relevant

part, that Experian

> will <u>process disputes generally by sending your
> dispute to the furnisher of the information</u> or to the
> vendor who collected the information from a public
> record. If we were able to make changes to your credit
> report based on information you provided, or if you
> requested the addition of a statement, we have done
> so. <u>Otherwise, we have contacted the company reporting
> the information you disputed, supplied them all
> relevant information and any documents you gave us
> with your dispute</u> . . . .

<u>Id.</u> (emphasis added). Although the Experian report states

that it was completed in response to a request that the

plaintiff recently submitted, the results came over a year

after the plaintiff first submitted a dispute to the

unidentified CRA. It is reasonable to infer that the

plaintiff disputed her credit reporting with Experian,

whose general practice was to send the dispute to the

---

[5] Generally, on a motion to dismiss, a court considers only the allegations
made in, and exhibits attached to, the complaint. <u>See, e.g.</u>, <u>Liberty Mut.
Fire Ins. Co. v. E.E. Cruz & Co.</u>, 475 F. Supp. 2d 400, 405 (S.D.N.Y. 2007)
("It is . . . error to consider affidavits and exhibits submitted by
defendants, or rely on factual allegations contained in legal briefs or
memoranda, in ruling on a 12(b)(6) motion to dismiss.") (internal quotation
marks, bracketing, and citations omitted); <u>Harris v. N.Y. State Dep't of
Health</u>, 202 F. Supp. 2d 143, 175 (S.D.N.Y. 2002) ("A plaintiff cannot oppose
a motion to dismiss through assertions of facts and references to documents
not reflected in the complaint at issue, and the parties' pleadings cannot be
amended by these means."). However, in this case, Exhibit 3 to the
plaintiff's Opposition is dated 20 days after the filing of the SAC. Rather
than ask the <u>pro se</u> plaintiff to file a third amended complaint including the
Experian dispute results, the Court accepts that there is an issue of fact
that requires discovery on this claim.

furnisher of information. The plaintiff has alleged
sufficient facts to warrant discovery as to whether
Citizens received notice of the plaintiff's dispute from
Experian. Accordingly, the defendants' motion to dismiss
Count V is **denied.**

**G.**

The defendants also argue that the plaintiff has failed to
state a claim under the FDCPA (Count VI) because the plaintiff
has not alleged that Citizens is a "debt collector" within the
meaning of the statute.

"As a general matter, creditors are not subject to the
FDCPA. However, a creditor becomes subject to the FDCPA if the
creditor in the process of collecting his own debts, uses any
name other than his own which would indicate that a third person
is collecting or attempting to collect such debts. A creditor
uses a name other than its own when it uses a name that implies
that a third party is involved in collecting its debts, pretends
to be someone else or uses a pseudonym or alias." Maguire v.
Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998)
(internal quotation marks and citations omitted).

In Scalercio-Isenberg I, this Court granted the motion to
dismiss the FDCPA claim because the plaintiff had not alleged
that Citizens was a debt collector, "rather than a creditor

attempting to collect the debt the plaintiff owes it." 2019
WL 1585121, at *3.

In the SAC, the plaintiff alleges that the defendants "set
up their organizational structure" in a manner that obscures the
fact that Citizens is a debt collector. SAC at 6-7. The
plaintiff alleges that she received statements from various
different entities, which imply that a third party was
attempting to collect Citizens' debt.

The new allegations fail to establish that Citizens was
using an alias to collect a debt it was owed. Nearly all of the
entities' names that the plaintiff listed — ("Citizens Financial
Group," "Citizens Bank N.A.," "Citizens Home Loans," "Charter
One A division of RBS Citizens N.A.," and "Charter One N/A,") –
include the word "Citizens," which clearly refers to the
defendant. To the extent that the plaintiff is arguing that
Citizens is a separate name from Charter One, this Court noted
in Scalercio-Isenberg I that the plaintiff had acknowledged that
the HELOC she signed with Charter One was acquired by Citizens.
2019 WL 1585121, at *1. Thus, the plaintiff's new allegations
are still insufficient to state a claim under the FDCPA because
Citizens was collecting its own debt and did not do so in a way
that implied it was doing so as a third party or using an alias.
Accordingly, the defendants' motion to dismiss Count VI is
**granted.**

Finally, the defendants argue that there are no facts alleged that support a claim for common law fraud (Count VII) and that the plaintiff has not met the heightened pleading standard for pleading fraud as set out by Fed. R. Civ. P. 9(b). In this section of her complaint, the plaintiff also alleges that the defendants committed fraud under NYGBL § 349 and § 13-2310 of Arizona's Criminal Code. For the reasons stated in Section C & D above, the plaintiff's claims of fraud pursuant to NYGBL § 349 and § 13-2310 of Arizona's Criminal Code are **dismissed**.

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001). Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Rule 9(b) requires that a complaint "specify the time, place, speaker, and content of the alleged misrepresentations. In addition, the complaint should explain how the misrepresentations were fraudulent and plead those events which

give rise to a strong inference that the defendant had an intent

to defraud, knowledge of the falsity, or a reckless disregard

for the truth." Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d

Cir. 2001) (internal quotation marks and citations omitted).

The plaintiff has alleged that she received a letter from

Citizens indicating that Citizens had not received a payment for

the plaintiff's new account, when she had not opened a new

account. SAC at 8. However, the plaintiff has not pleaded any

facts to demonstrate that the defendants knew this to be false

or made such statements about a new account with the intent to

induce reliance. Further, the plaintiff disputed ever opening a

new account, and thus could not have reasonably relied on this

representation and likewise, could not have suffered injury from

it.

The plaintiff also alleges that the defendants and their

lawyers have joined together to force the plaintiff's loan into

default, to increase legal fees, to eliminate the obligation of

Citizens to service the loan, to seek revenge for a prior

lawsuit, and to turn a profit. These allegations are completely

conclusory and do not allege any specific misrepresentations of

fact or that the defendants knew of such misrepresentations.

These allegations do not give rise to a strong inference

that the defendants or their lawyers had any intent to defraud

the plaintiff. Further, the lack of detail regarding the time,

place, speaker, and content of the alleged misrepresentations underline that the plaintiff has failed to allege sufficient facts to support a strong inference that the defendants intended to defraud the plaintiff. Accordingly, the defendants' motion to dismiss Count VII is **granted.**

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **denied** with respect the claims under the TCPA (Count IV) and the FCRA (Count V). The defendants' motion is **granted** with respect to the claims against Bruce Van Saun; the breach of contract claim (Count I); claims under NYGBL § 349 (Count II), Arizona's Criminal Code (Count III), the FDCPA (Count VI); and the claim of common law fraud (Count VII).

The Court has considered the sur-reply filed by the plaintiff, which does not affect the outcome of this motion. The defendants' motion to strike this document is **denied** as moot.

The Clerk is directed to close all open motions.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **December 23, 2019**          ___/s/ John G. Koeltl_____
                                                 **John G. Koeltl**
                                        **United States District Judge**